# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| EBONIE ROBINSON, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) No. 3:18-05039-CV-RK |
| TARGET CORPORATION and KEVIN IVERSON, | ) |
| | ) |
| Defendants. | ) |

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

Before the Court is Plaintiff's Motion to Remand. (Doc. 10.) Defendants oppose the motion, and it has been fully briefed. (Docs. 11, 17, 20, 25.) After careful consideration, and for the reasons below, the Motion to Remand is **GRANTED in part** and **DENIED in part**. (Doc. 10.) In particular, the case is **REMANDED** to state court, but Plaintiff's request for attorneys' fees is **DENIED**.

## Background

Plaintiff asserts employment discrimination claims under the Missouri Human Rights Act ("MHRA"). (Doc. 8.) She alleges that Defendant Kevin Iverson, her supervisor at Target, harassed her based on her race and repeatedly directed racial slurs at her. (*Id.* ¶¶ 15-27.) Plaintiff claims she was retaliated against after she reported this and other incidents of discrimination based on pregnancy and sexual orientation. (*Id.* ¶¶ 28, 33.) According to the Amended Complaint, Iverson told coworkers he was going to look for a reason to fire Plaintiff, and her employment was terminated on or about May 15, 2017. (*Id.* ¶¶ 29, 30.)

Plaintiff pursued administrative relief with the Missouri Commission on Human Rights ("MCHR"), which issued her a "right-to-sue" letter on January 4, 2018. On August 28, 2017, the State of Missouri amended the MHRA to bar claims against individual employees such as Iverson. 2017 Mo. Legis. Serv. S.B. 43, § 213.010(8)(c) (eff. Aug. 28, 2017).

Plaintiff filed this lawsuit on March 30, 2018. Defendants timely removed the case to this Court based on diversity jurisdiction and then moved to dismiss Iverson from the case, citing the 2017 MHRA amendment. (Doc. 1, 14.) Plaintiff has moved to remand the case, arguing that the Court lacks diversity jurisdiction because Plaintiff and Iverson are both citizens of Missouri. (Docs. 10, 11.) Plaintiff also seeks attorneys' fees. (Doc. 11.) Defendants oppose the motion to

remand, arguing that (1) complete diversity exists because Iverson has become a citizen of Oklahoma, and (2) even if Iverson is not diverse, his citizenship should be disregarded because he was fraudulently joined as a defendant. (Doc. 17.)

## Discussion

**I.      Diversity of Citizenship**

The removing party "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Altimore v. Mount Mercy Coll.*, 420 F.3d 763, 768 (8th Cir. 2005). To invoke the Court's diversity jurisdiction, (1) the suit must be between citizens of different states, and (2) the amount in controversy must be over $75,000. 28 U.S.C. § 1332(a)(1). No defendant can be a citizen of the same state as any plaintiff. *Walker by Walker v. Norwest Corp.*, 108 F.3d 158, 161 (8th Cir. 1997). Diversity "depends on the citizenship of the parties at the time the action is commenced." *Chavez-Lavagnino v. Motivation Educ. Training, Inc.*, 714 F.3d 1055, 1056 (8th Cir. 2013). "[T]he parties must be diverse both when the plaintiff initiates the action in state court and when the defendant files the notice of removal in federal court." *Id.*

Defendants contend that Iverson and Plaintiff are diverse because "Iverson had already commenced the process of moving to another state" and "intended to be domiciled[1] in Oklahoma" before this case was filed on March 30, 2018. (Doc. 17 at 13-14.) However, this was not sufficient to change his citizenship. "The legal standard to determine citizenship is straightforward." *Altimore*, 420 F.3d at 768. "Citizenship is determined by a person's physical presence in a state along with his intent to remain there indefinitely." *Id.* "Once an individual has established his state of citizenship, he remains a citizen of that state until he legally acquires a new state of citizenship." *Id.* at 769. To change citizenship, "an individual must both be physically present in the state and have the intent to make his home there indefinitely." *Yeldell*, 913 F.2d at 537.

Here, complete diversity is lacking because Iverson was a citizen of Missouri until he was physically present in Oklahoma with the intent to remain there indefinitely. That did not occur until after this case was filed. Iverson did not move to Oklahoma until April 22, 2018, according to his own declaration, and the record contains no evidence that Iverson was physically present in Oklahoma prior to the commencement of this action. (Doc. 1-2 ¶ 4.) Accordingly, Defendants have not carried their burden of showing that Plaintiff and Iverson are citizens of different states.

---

[1] "For purposes of diversity jurisdiction, the terms 'domicile' and 'citizenship' are synonymous." *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990) (citation omitted).

## II. Fraudulent Joinder

Because Plaintiff and Iverson are not diverse, the case must be remanded unless Iverson was fraudulently joined. *See Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 809 (8th Cir. 2003). "[J]oinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." *Id.* at 810 (quoting *Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868, 871 (8th Cir. 2002)) (quotation mark omitted). "Conversely, if there is a reasonable basis in fact and law supporting the claim, the joinder is not fraudulent." *Id.*

The sole question for this Court is whether state law might reasonably support Plaintiff's argument that her claim against Iverson accrued before the MHRA amendment went into effect on August 28, 2017.[2] "It is settled law in Missouri that the legislature cannot change the substantive law for a category of damages after a cause of action has accrued." *Klotz v. St. Anthony's Med. Center*, 311 S.W.3d 752, 760 (Mo. banc 2010). Under the pre-amendment version of the MHRA, individual supervisors could be liable as "employers" if they were "directly acting in the interest of an employer." *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 669 (Mo. banc 2009). Under the amended version of the MHRA, this avenue of individual liability is not available because the term "'[e]mployer' shall not include . . . [a]n individual employed by an employer." Section 213.010(8)(c), RSMo Supp. 2017.

Plaintiff argues that her claim accrued pre-amendment, when she was allegedly discriminated against, which was before and at the time of her termination on May 15, 2017. Defendants argue that her claim could not have accrued until the MCHR issued a right-to-sue letter, which happened on January 4, 2018, after the August 28, 2017 amendment. The parties cite competing case law addressing accrual under the MHRA statute of limitations, but those cases do not resolve the accrual issue raised here because the statute has several limitations periods with different starting points. *See* § 213.111.1, RSMo Supp. 2017. Although a claim must be filed in court within 90 days of the issuance of a right-to-sue letter, *Hammond v. Mun. Corr. Inst.*, 117 S.W.3d 130, 135-36 (Mo. App. 2003), it also must be filed in court within two years of the date of the termination of employment, *Mann v. Duke Mfg. Co.*, 166 F.R.D. 415, 418 (E.D. Mo. 1996).

---

[2] Defendant does not contend that the amendment's elimination of individual liability under the MHRA applies retroactively to already-accrued claims, and several courts have held that it does not. *E.g.*, *Sanders v. KC Bell, Inc.*, No. 4:18-cv-328-BCW, Doc. 19 at 4-5 (W.D. Mo. June 21, 2018) (not retroactive); *Baker v. Jackson Auto. Kan. City, LLC*, No. 4:17-cv-1011-ODS, Doc. 27 at 4-5 (W.D. Mo. March 7, 2018) (same, collecting cases).

3

The Court concludes, consistent with Plaintiff's position, that there is a reasonable basis in fact and law supporting Plaintiff's claim against Iverson. At least one state trial court has ruled that an MHRA claim accrues "when the events giving rise to the damage in the alleged claim occurred, not when the right-to-sue letter was issued by the MCHR." *Issa v. Progressive Plumbing, Inc.*, No. 18CT-CC00025 (Cir. Ct. Christian Cnty., Mo. June 19, 2018).

Furthermore, several courts, including others in this district, have held that the failure to obtain a right-to-sue letter does not affect the claim's validity for accrual purposes because the error can be cured and the defense waived. *Dumm v. Bob Evans Farms, LLC*, No. 4:17-cv-981-BP, Doc. 21 at 3-4 (W.D. Mo. Jan. 9, 2018) (finding that a right-to-sue letter is not necessary for accrual and remanding the case); *Sanders*, No. 4:18-cv-328-BCW, Doc. 19 at 3-4 (W.D. Mo. June 21, 2018) (same); *Cunningham v. Gen. Mills, Inc.*, No. 17-cv-78-HEA, 2018 WL 1806694, at *2 (E.D. Mo. April 17, 2018) (same). This is consistent with the notion that obtaining an MHRA right-to-sue letter is a condition precedent that can be cured, not a jurisdictional prerequisite. *Whitmore v. O'Connor Mgmt., Inc.*, 156 F.3d 796, 800 (8th Cir. 1998); *see also King v. Conti Elec., Inc.*, No. 4:05-cv-1552-SNL, 2006 WL 1153800, at *1 (E.D. Mo. May 1, 2006) (holding that the failure to obtain a right-to-sue letter "is subject to waiver, estoppel, and equitable tolling, and may be cured after the action has been commenced"); *Kerr v. Mo. Veterans Comm'n*, 537 S.W.3d 865, 873-76 (Mo. App. 2017) (holding that failure to exhaust administrative remedies is a waivable defense). The text of the MHRA also supports this view by referring to the right-to-sue letter as simply a "notification letter" that "indicate[s]" the plaintiff's right to bring a civil action, which suggests that the letter is merely a notice of a right that already exists, not the trigger point for the creation of new rights. Section 213.111.1, RSMo Supp. 2017.

In addition, because the MHRA itself does not expressly address when a cause of action accrues, it might borrow the accrual standard from the general statute of limitations. Under that statute, a cause of action accrues "when the damage is . . . sustained and is capable of ascertainment." Section 516.100, RSMo 2016; *see Sanders*, No. 4:18-cv-328-BCW, Doc. 19 at 3-4 (W.D. Mo. June 21, 2018) (invoking this standard and holding that a right-to-sue letter is not necessary for accrual); *Baker*, No. 4:17-cv-1011-ODS, Doc. 27 at 4-5 (W.D. Mo. March 7, 2018) (same).

Defendants contend that a claim "'cannot be said to have accrued until it is within [a plaintiff's] power to prosecute a suit to a successful judgment.'" (Doc. 17 at 8 (quoting *De Paul Hosp. Sch. of Nursing, Inc. v. Sw. Bell Tel. Co.*, 539 S.W.2d 542, 547 (Mo. App. 1976)).) This statement from *De Paul* appears to be nonbinding dicta because it was broader than necessary for the court to reach its decision. *See King v. Nashua Corp.*, 763 F.2d 332, 334 (8th Cir. 1985) (citing *De Paul* for the proposition that accrual occurs when the plaintiff's damage is capable of ascertainment).

Defendants also cite cases from other jurisdictions that hold a right-to-sue letter is required for accrual. *Peters v. Black Tie Value Parking Serv., Inc.*, No. CIV-12-809-D, 2013 WL 149773, at *4 (W.D. Okla. Jan. 14, 2013); *Mazzanti v. City of Owasso*, No. 12-CV-22-GKF-PJC, 2012 WL 2505504, at *1 (N.D. Okla. June 28, 2012). In those cases, however, the courts were ruling on motions to dismiss, so they were required to squarely address the state-law question. Here, the Court is not tasked with definitively resolving Missouri law on this issue. *Filla*, 336 F.3d at 811. "[T]he district court's task is limited to determining whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." *Id.* It is enough that Missouri law might reasonably support Plaintiff's argument that her claim against Iverson accrued before the MHRA amendment went into effect on August 28, 2017. Accordingly, Iverson has not been fraudulently joined, and the Court does not have diversity jurisdiction.[3]

## III. Attorneys' Fees

Plaintiff requests attorneys' fees under 28 U.S.C. § 1447(c), which states that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Absent unusual circumstances, attorneys' fees "should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136, 141 (2005). Fees are appropriate if the defendants removed the case "for the purpose of prolonging litigation and imposing costs on the opposing party." *Id.* at 140. However, the defendants need not have an "airtight" or "obvious"

---

[3] Defendant argues for a different fraudulent joinder standard under *Simpson v. Thomure*, 484 F.3d 1081, 1084 (8th Cir. 2007). In *Simpson*, the Eighth Circuit stated that it "may not grant . . . relief simply because Missouri law may be unclear or hard to apply." *Id.* However, the Eighth Circuit has "decline[d] to depart from the *Filla* standard" and has clarified that *Simpson* does not apply unless the case has reached a final judgment. *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 977 n.7, 979-80 & n.10 (8th Cir. 2011). This case has not reached a final judgment, so the *Filla* standard applies. *Id.*

basis for removal.  *Id.*  Here, the Court finds that Defendants did not file the removal to prolong the litigation or impose costs on Plaintiff, and the Court concludes that Defendants had an objectively reasonable basis to argue that Iverson was fraudulently joined.

## Conclusion

Accordingly, the Court **ORDERS** as follows:

1) Plaintiff's Motion to Remand is **GRANTED in part** and **DENIED in part**.  (Doc. 10.)  Specifically, the case is **REMANDED** to the Circuit Court of Jasper County, Missouri, but Plaintiff's request for attorneys' fees is **DENIED**.

2) The Court lacks jurisdiction to rule on Defendant Kevin Iverson's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 14), which remains pending for resolution by the state court.

**IT IS SO ORDERED.**

                                        s/ Roseann A. Ketchmark
                                        ROSEANN A. KETCHMARK, JUDGE
                                        UNITED STATES DISTRICT COURT

DATED:  December 18, 2018